UNITED STATES of America

v.

Julius ISAACSON, Defendant.

No. 94–CR–219 (JS).

United States District Court,
E.D. New York.

May 26, 1994.

U.S. Attorney's Office, E.D.N.Y. by Pamela J. Davis, Asst. U.S. Atty., Brooklyn, NY, for U.S.

Dublirer, Haydon, Straci & Victor by Charles Haydon, New York City, for defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

This is a criminal prosecution in which defendant Julius Isaacson, a union official, has been charged along with two other codefendants, *inter alia*, with embezzling money and conspiring to embezzle money from a labor union and four separate employee benefit funds. The Indictment alleges that the defendants participated in a scheme whereby the aforementioned entities would pay contractors inflated prices for renovation work performed on a union-owned building. The contractors would then pay kickbacks to the defendants in amounts approximating the excess consideration transferred. The Government now moves to disqualify defendant Isaacson's counsel because of a potential conflict of interest stemming from counsel's prior representation of at least two of the enti-

ties from which Isaacson allegedly embezzled funds. For the reasons discussed herein, the Government's motion is denied.

## BACKGROUND

### 1. The Indictment

According to the Indictment, until recently, defendant Julius Isaacson was the president of the International Union of Allied Novelty and Production Workers (the "International"), a union that represents a variety of different factory workers, bus drivers, ambulance drivers and other service employees. During the period covered by the Indictment, Isaacson also served as president of Local 118, an affiliate of the International, and as president of Joint Board 18, an association consisting of Local 118 and Local 231 that was established for the purpose of assisting these local unions in administering their affairs. See Haydon Aff. Ex. A, at 1 (E.D.N.Y. Apr. 11, 1994).

Relevant to the Indictment, Local 118 and Local 231 both maintain welfare funds (the "Local 118 Welfare Fund" and the "Local 231 Welfare Fund") that are covered by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). These funds provide medical benefits for their members. In addition, Local 118 maintains a pension fund (the "Local 118 Pension Fund") that is regulated by ERISA. Further, Local 231 maintains a General Fund (the "Local 231 General Fund") that is not covered by ERISA, and which is used to fund the administrative expenses of Local 231.

The Indictment alleges that in or about the Fall of 1990, defendant Julius Isaacson, acting on behalf of the International, signed an agreement with GHT Realty Company ("GHT") to purchase a building located at 25 Roslyn Road, Mineola, New York, for a total purchase price of $750,000. The building was to be used for union office space. A rider to the contract, which was dated December 1990, stated that as part of the contract of sale, the International would be entitled to a credit of $65,000 from GHT for renovation work that needed to be performed on the building. However, at the closing, which occurred in January 1991, the building's purchase price was not reduced by $65,-000. Instead the International paid GHT the full amount of $750,000, and, in turn, GHT issued a check for $65,000 to Careccia & Sons, a construction company that had been hired by the International to perform the renovation work at 25 Roslyn Road. John Careccia, a principal of Careccia & Sons and an unindicted coconspirator, thereafter deposited the check from GHT and allegedly transferred approximately $55,000 in cash to codefendant James Baldo.

The Indictment further alleges that from January 1991 through September 1991, the period during which Careccia & Sons performed renovation work at 25 Roslyn Road, it received approximately $277,850 from the International and the employee benefit funds purportedly for construction services rendered at 25 Roslyn Road. During this same time period, Careccia transferred approximately $130,000 of this money, including the $55,000 earlier discussed, to James Baldo, who in turn distributed a portion of it to defendant Julius Isaacson. These fund transfers were allegedly concealed on the contractor's books by codefendant Bernard Miller, the accountant for Careccia & Sons at this time.

The Government moreover accuses defendants Isaacson and Baldo of obstructing law enforcement investigation of this theft. Further to this point, it is alleged that at a meeting in the Fall of 1993, these codefendants instructed Careccia what he should say if questioned about the payments that he received for the renovation work at 25 Roslyn Road. At this same meeting, Isaacson allegedly compensated Careccia for certain legal expenses.

On March 15, 1994, the Government filed a five-count Indictment accusing the defendants of participating in the aforementioned scheme. Isaacson has been named in Counts One through Four. Among the statutes that Isaacson has been accused of violating are 18 U.S.C. § 664 (entitled "Theft or embezzlement from employee benefit plan"), 29 U.S.C. § 501(c) (criminal provisions of ERISA punishing the embezzlement of assets), and 18 U.S.C. § 1512(b)(1) (imposing criminal liability upon anyone who "knowingly uses intimi-

dation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to ... influence, delay, or prevent the testimony of any person in an official proceeding").

### 2. Counsel's Potentially Conflicting Professional Engagements

Defendant Isaacson is presently represented by Charles Haydon, Esq., a partner in the law firm of Dublirer, Haydon, Straci & Victor. In addition to representing Isaacson, either he or members of his firm have at different times represented the Local 118 Pension Fund, the Local 118 Welfare Fund, and the Local 231 Welfare Fund, each of which is a victim of the thefts alleged in the Indictment. *See* Indictment ¶ 4.

The scope—as well as the legal implications—of counsel's prior representations of the named unions are disputed by the parties. In support of its position that both Haydon's and his firm's prior professional engagements with respect to the alleged victims were not inconsequential, the Government has submitted minutes from a meeting of the trustees for Pension Fund Local 118, held on April 15, 1992, in which Isaacson refers to Haydon as the attorney for Pension Fund Local 118. *See* Gov't Aff. Ex. B (E.D.N.Y. Apr. 5, 1994). Further, the Government has attached copies of I.R.S. Form 5500, Annual Return/Report of Employee Benefit Plan, for fiscal plan year ended June 30, 1992, for both the Local 118 Pension Fund and the Local 118 Welfare Fund. Each of these tax returns report payments during the fiscal year to "Dublirer, Haydon, et al" in the amount of $7,200. According to these tax returns, Mr. Haydon's firm was the only law firm to be compensated for legal services by these entities during the fiscal year reported. *See* Gov't Aff. Ex. C, D (E.D.N.Y. Apr. 5, 1994).

While Mr. Haydon does not dispute that his law firm was the exclusive provider of legal services to the two aforementioned ERISA-covered plans, he contends that these prior professional engagements were a direct outgrowth of an earlier professional and personal relationship with defendant Isaacson.

Mr. Haydon asserts that defendant Isaacson first retained him in January 1989 in connection with an inquiry into possible criminal activities of third persons, and that as a result of this professional engagement the two became friends. Haydon further contends that he has handled several civil matters for Isaacson personally, and that this lead Isaacson to request that he render legal services for Joint Board 18, the local affiliates of the International, and the local unions' ERISA-covered plans. *See* Haydon Aff., at 2 (E.D.N.Y. Apr. 11, 1994). These services included (i) his firm's representation of Local 118 during February 1990 in a jurisdictional dispute with another union, (ii) his partner's defense of the Local 231 Welfare Fund in two separate actions in small claims court, and (iii) the drafting of a constitution and by-laws during either 1990 or 1991 for Joint Board 18 which, as earlier discussed, is comprised of Local 118 and Local 231. *See id.* at 2–4. In addition, Haydon attests that as of March 30, 1994 his law firm was receiving a monthly retainer from Joint Board 18. *See id.* at 4.

Thus, to recapitulate, the record suggests that during the last three-and-a-half years Dublirer, Haydon, Straci & Victor has represented three of the alleged victims named in the Government's Indictment: (1) the Local 118 Pension Fund, (2) the Local 118 Welfare Fund, and (3) the Local 231 Welfare Fund. Furthermore, during part of the period covered by the Indictment, Mr. Haydon's law firm was the sole provider of legal services to at least two of these entities: the Local 118 Pension Fund, and the Local 118 Welfare Fund. Moverover, through its representation of Joint Board 18, Mr. Haydon's law firm, as of March 30, 1994, actively represented the interests of two local unions of which Isaacson was a fiduciary (i.e., Local 118 and Local 231) that the Government does not allege to have been victimized by Isaacson.

Mr. Haydon asserts that on March 31, 1994, upon learning that the Government intended to move to disqualify his firm from representing Isaacson in the instant criminal prosecution, he and his firm withdrew as counsel for all purposes with respect to Local

118, Local 231, the Local 118 Pension Fund, and the Local 118 Welfare Fund. *See id.* Ex. C–F. His firm also withdrew on this date as counsel for all purposes with respect to Joint Board 18. *See id.* Ex. B. At the time of its withdrawal, Mr. Haydon's firm was representing Joint Board 18 in a matter pending before the Workers Compensation Board. *See id.* at 4. Haydon does *not* assert, however, that his firm has withdrawn from representing the Local 231 Welfare Fund. *See id.*

Defendant Isaacson has submitted to the Court an affidavit requesting that Mr. Haydon and his law firm remain as his counsel, and waiving his right to be represented by counsel free of any potential conflicts of interest. *See id.* In addition, on April 19, 1994, Isaacson affirmed a voluntary, knowing waiver of this right before the Court. Subsequently, at a hearing held on April 22, 1994, the Government declined the opportunity to question possible witnesses to ascertain any actual conflicts of interest that would arise.

Despite Isaacson's waiver of his right to be represented by counsel free of any potential conflicts of interest, the Government continues to assert that Mr. Haydon and his law firm should be disqualified from representing Isaacson in the instant criminal prosecution. The Government argues that under *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1697–98, 100 L.Ed.2d 140 (1988), the Court should disqualify defense counsel, notwithstanding the defendant's waiver, because the prejudice to the defendant cannot be predicted accurately, and the appearance of impropriety is so great as to make acceptance of the waiver intolerable.

In his opposition papers, Mr. Haydon seeks to rebut the Government's argument by emphasizing the unlikelihood that any *actual* conflict of interest will come to fruition during the course of the trial. Mr. Haydon asserts that in representing Isaacson at trial, he has no intention to cross-examine in an adversarial context any representative of any of the unions or entities that his firm has previously represented. *See* Haydon Aff., at 5. He further asserts that there is no secret or confidential information that his firm has obtained through its representation of the

entities in question that is not known to Isaacson. Haydon moreover contends that, in any event, there is no need to cross-examine any witness from any of these entities because, as he asserts, the Indictment focuses principally "upon what happened to a portion of the money received by a contractor who had been hired to make repairs." Defendant's Opp. Mem., at 1 (E.D.N.Y. Apr. 11, 1994).

## DISCUSSION

The Sixth Amendment to the Constitution guarantees the accused the right to the assistance of counsel in all criminal prosecutions. *See Wheat v. United States,* 486 U.S. 153, 158, 108 S.Ct. 1692, 1696–97, 100 L.Ed.2d 140 (1988). The purpose of this right is "to ensure that criminal defendants receive a fair trial." *Id.* at 159, 108 S.Ct. at 1697 (internal quotations omitted). Accordingly, "in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, [and] not on the accused's relationship with his lawyer as such." *Id.* (internal quotations omitted). "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.*

Consequently, the Sixth Amendment right to choose one's own counsel is not absolute. *See id.* at 159–60, 108 S.Ct. at 1697–98; *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1645–46, 128 L.Ed.2d 365 (1994); *United States ex rel. Stewart v. Kelly,* 870 F.2d 854, 856–58 (2d Cir.1989); *see also United States v. Arrington,* 867 F.2d 122, 128–29 (2d Cir.) (affirming district court's disqualification of defendant's attorney despite defendant's consent to representation), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). As the Supreme Court has noted, a criminal defendant's right to counsel of his or her choice may be subordinated to other policy concerns where, for example, the prospective advocate is not a

member of the bar, the attorney declines to represent the defendant, the attorney has a prior or ongoing relationship with an opposing party, or where the attorney represents codefendants in a multidefendant criminal prosecution. *See Wheat,* 486 U.S. at 159–60, 108 S.Ct. at 1697–98.[1] *See also Locascio,* 6 F.3d at 933–34 (disqualification appropriate to prevent an unfair detriment to the government where possibility existed that house counsel to the Gambinos would function in his representational capacity as an unsworn witness for the defendant); *Arrington,* 867 F.2d at 129 (disqualification appropriate where the chosen counsel is implicated in the allegations against the accused and could become an unsworn witness for the accused).

While the Sixth Amendment creates a presumption in favor of allowing a criminal defendant to retain his counsel of choice, *see Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697–98, a federal district court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id. See United States v. Rogers,* 9 F.3d 1025, 1032 (2d Cir.1993) (A district court has the authority to insist that a defendant be represented by counsel free of any conflicts of interest.), *petition for cert. filed,* No. 93–8308 (U.S. Feb. 25, 1994). Particular concern imbues where the court is able to foresee conflicts of interest that may arise through the attorney's prior or concurrent representation of a witness with interests adverse to the criminal defendant. In such circumstances, the attorney may be unable within ethical boundaries to provide a vigorous cross-examination of her former client because, by so doing, she might elicit confidential facts learned through the attorney-client relationship. This would present an untenable "catch–22" to the attor-

ney, because if she restrains from cross-examining the witness in a meaningful way, she then would fail to provide the criminal defendant with adequate assistance of counsel. *See Kelly,* 870 F.2d at 857.

Thus, a district court is "allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." [2] *Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699. Ultimately, the determination of whether to disqualify an attorney for a potential conflict of interest is vested in the sound discretion of the district court, and a careful "evaluation of the facts and circumstances of each case" is warranted to determine whether a showing of a serious potential for conflict may overcome the presumption in favor of retaining the criminal defendant's counsel of choice. *Id.* at 164, 108 S.Ct. at 1699–1700. *See Locascio,* 6 F.3d at 935 ("[D]isqualification is a drastic measure, [and] the district court is in the best position to evaluate what is needed to ensure a fair trial.").

Turning to the merits of the Government's motion, the Court finds that the facts and circumstances of the instant case do not warrant the disqualification of defendant's chosen counsel at this juncture of the proceedings. The Court regards three factors in particular to weigh heavily in its analysis.

First, the contested factual allegations within the Indictment implicating the defendant focus principally upon conduct *external* to the entities that were formerly represented by his counsel's law firm. The Government's case against Isaacson concentrates chiefly upon what happened to a portion of

---

1. In *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Supreme Court held that the district court did not abuse its discretion in refusing a criminal defendant the right to substitute counsel on the eve of trial in view of a substantial potential conflict of interest resulting from his chosen counsel's concurrent representation of two codefendants. *See id.* at 164, 108 S.Ct. at 1699–1700.

2. Concomitantly, a criminal defendant's execution of a knowing and voluntary waiver of his right to conflict-free counsel does not necessarily prohibit him from raising on appeal his attorney's conflict of interest on an ineffective-assistance claim. *See Wheat,* 486 U.S. at 161–62, 108 S.Ct. at 1698–99; *United States v. Vowteras,* 500 F.2d 1210, 1211 (2d Cir.) (waiver may be repudiated through a credible showing of some real conflict of interest), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

the payments received by a contractor that had been hired by a union to make repairs to a union-owned building. The principal allegations in dispute with respect to Isaacson are (i) whether he conspired to receive kickbacks from the contractor, (ii) whether he ultimately did receive such kickbacks from the contractor, and (iii) whether he knowingly sought to obstruct law enforcement investigation of the alleged scheme. In contrast, Isaacson, speaking through his counsel, has indicated that he will *not* dispute the fact that payments were made *to the contractor* in accordance with the details set forth within the Indictment. *See* Defendant's Opp. Mem., at 2 (E.D.N.Y. Apr. 11, 1994). This would seem to diminish the potential for an actual conflict of interest.

Further, the relative sparsity of information concomitant to the early pretrial setting does not permit the Court to engage in the rigorous analysis necessary to justify the disqualification of defendant's chosen counsel at this time. The Court has not been provided with a summary of the expected testimony of prospective witnesses by either the Government or by Isaacson's counsel, and therefore has not been permitted the opportunity to evaluate fully whether a serious potential for conflict exists. In addition, it is equally unclear whether any potential conflicts would be eliminated through the parties' stipulations of fact.

Moreover, Isaacson's counsel has presented evidence showing that it has ceased to represent all but one of the entities referenced in the Indictment of which the defendant either was a fiduciary, or is alleged to have embezzled funds. To reduce the likelihood of conflict, the Court will require Mr. Haydon's law firm to withdraw from representing the last of these entities, and shall order it to file an affidavit attesting that it is not owed any unpaid amounts by any of the entities in question.[3] These precautionary measures, viewed in tandem with the other

factors discussed above, lead the Court to conclude at this juncture that the presumption in favor of retaining the defendant's counsel of choice has not been overcome. *See Wheat,* 486 U.S. at 164, 108 S.Ct. at 1700 ("The District Court must recognize a presumption in favor of [a criminal defendant's] counsel of choice....").

### CONCLUSION

The Government's motion to disqualify defendant Isaacson's counsel is denied without prejudice to reapply at a later date. As a condition to its continued representation of defendant Isaacson in the instant case, the law firm of Dublirer, Haydon, Straci & Victor, by Charles Haydon, Esq., shall file title with the Court, within seven days of the docketing of the instant Memorandum and Order, a copy of the firm's letter withdrawing as counsel to the Local 231 Welfare Fund. By the same date, Mr. Haydon shall also file with the Court an affidavit attesting that the law firm of Dublirer, Haydon, Straci & Victor no longer represents, in any capacity, any of the unions or funds named in the Indictment, and that the same law firm is not owed any legal fees or compensable expenses by any of these named entities.

SO ORDERED.

---

3. Counsel's withdrawal from representing the victims of the alleged perpetrator's acts thus distinguishes the instant case from *United States v. Floyd,* No. 87 CR 913, 1988 WL 23832 (N.D.Ill. Mar. 8, 1988), *aff'd,* 882 F.2d 235 (7th Cir.1989), in which the Government's motion to disqualify defendant's counsel was granted. *See id.* at *5.

In *Floyd,* unlike the instant case, the defense attorney and his law firm simultaneously represented both the victim and the alleged perpetrator of an embezzlement. *See id.* at *3. Further, defense counsel in *Floyd* maintained a pecuniary interest in continuing an ongoing business relationship with the victim. *See id.*